Néstor I. Vincenty, Petitioner and Appellant, *v.* Board of Trustees of the University of Puerto Rico, etc., Respondent and Appellee.

No. 5529.    Argued April 19, 1932.—Decided May 16, 1933.

*Samuel R. Quiñones* for petitioner.    *Charles E. Winter, Attorney General,* and *Felipe Janer, Assistant Attorney General,* for respondent.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

On September 30, 1930, Néstor I. Vincenty brought this mandamus proceeding in the District Court of San Juan against the Board of Trustees of the University of Puerto Rico to compel said board to restore "in the annual budget of the University of Puerto Rico, including it in the budget for the fiscal year 1931–1932, the item destined to cover the expenses of the Division of Technical Research, in the amount of $10,900, appropriated by law."

The averments forming the basis of the petition textually read as follows:

"*Third:* That by virtue of Joint Resolution No. 57, passed by the Legislature of Puerto Rico on May 12, 1928, a division was organized in the Department of Education of Puerto Rico, for the scientific investigation of pedagogical problems.

"*Fourth:* That said division was organized in order to continue the work theretofore performed by the Office of Technical Research that was temporarily functioning in the Department of Education of Puerto Rico, the expenses of which were paid out of funds belonging to the University of Puerto Rico in accordance with a resolution adopted by the Board of Trustees of that institution.

"*Fifth:* That ever since the organization of the Division of Technical Research, as alleged in the third paragraph of this petition, the petitioner has been filling the office of Chief of said division under an appointment issued in his favor by the Commissioner of Education of Puerto Rico, and that the petitioner has a professional and personal interest, as a citizen and as a public officer, in said pedagogical research.

"*Sixth:* That the amount appropriated for the organization of the Division of Technical Research referred to in the third paragraph hereof, must be paid, according to the provisions of the joint resolution creating said division, from any fund in the Treasury not otherwise appropriated, or from the funds of the University of Puerto Rico, as the Board of Trustees of the said University may provide.

"*Seventh:* That during the years 1928 and 1929, the Board of Trustees of the University of Puerto Rico included in its annual budget the sum of $10,900, which, according to Joint Resolution

No. 57, passed by the Legislature of Puerto Rico in May 1928, was the amount of the expenses of the Division of Technical Research, and set aside said sum for the organization of the aforesaid Division.

*"Eighth:* That in the budget for the fiscal year 1930–1931, the Board of Trustees of the University of Puerto Rico failed to include the item of $10,900 pertaining to the Division of Technical Research, as above alleged, despite the fact that it was its duty under the law to include said item in its budget for the said fiscal year, and that the respondent board had then and still has sufficient authority to perform such duty; and the board has thereby abused any discretion it may have in the matter.

*"Ninth:* That upon information and belief, all the funds existing in the Treasury of Puerto Rico for the fiscal year 1930–1931, are destined to cover the expenses of the government, and that there is no money available in the Treasury of Puerto Rico to pay the expenses of the Division of Technical Research.

*"Tenth:* That the petitioner has heretofore petitioned the Board of Trustees of the University of Puerto Rico, to reconsider the budget of the University of Puerto Rico for the fiscal year 1930–1931, in so far as the same failed to include the item covering the expenses of the Division of Technical Research, but the said Board of Trustees, at a meeting held for this purpose, decided to ratify the budget previously approved without including the item which pertained to the Division of Technical Research.

*"Eleventh:* That the petitioner has made demand upon the Board of Trustees of the University of Puerto Rico to restore in its annual budget the item assigned for the expenses of the Division of Technical Research, and that the said board has refused to do so."

After the petition was filed, the court set a date to hear the parties as to whether the writ sought should issue. On that date the board entered a special appearance through the Attorney General, and alleged that the facts set forth in the petition are insufficient to entitle relator to the relief sought. The writing containing said allegation has been incorporated in the record and bears a footnote stating: "No filing notation appears."

On October 31, 1930, the court dismissed the petition for the writ. It set forth the grounds for its decision, and stated that both parties had been heard on their respective claims.

Feeling aggrieved by that decision, the petitioner appealed, and he has assigned in his brief seven errors. The first three concern matters of procedure. The last three, matters of substance under various aspects.

The first matter that arises in passing upon this case is as to whether the question involved therein has become academic by reason of the lapse of time. As we have seen, the specific prayer of the petition is that the Board of Trustees be commanded to include in its budget for the fiscal year 1930–1931, the item destined to cover the expenses of the division in question. At the time the hearing of this appeal was held before this Court, the said fiscal year had already elapsed. Any order that might properly be issued in favor of the petitioner, would thus be without any practical value.

However, as we are dealing with the interpretation of a statute which has not been repealed, and the same question might be raised again, and the instant case having been argued apparently in good faith, we shall decide it on the merits.

The procedural questions raised are without merit. A slight examination of the Act to establish the writ of mandamus (Comp. Stat., 1911, p. 269), and the existence of the inherent power of all judges to properly and faithfully discharge the duties of their office, suffice to conclude that the court acted correctly in the conduct of the proceedings and did not commit the first three errors assigned by the appellant.

The assertion of the petitioner to the effect that after a petition in mandamus is filed the judge is under an obligation to issue the alternative writ ''even though the right of the petitioner does not clearly appear from the petition,'' can not be accepted. If upon an examination of the petition, the right of the petitioner does not clearly appear, the judge must dismiss the petition.

Nor is the judge under a duty to act *ex parte*. The Act itself, by its section 6, provides that he ''may require notice of the application to be given to the adverse party, or may

grant an order to show cause why it should not be allowed, or may grant a writ without notice.''

Let us examine the essential errors assigned. In its last analysis, the question to be decided in this case is whether or not the law imposes upon the board the mandatory duty to include in its annual budget the necessary amount for the maintenance of the said division.

The statutory provisions invoked are to be found in Joint Resolution No. 57 of 1928, Session Laws, p. 844, ''To organize in the Department of Education of Porto Rico a Division of Technical Research for the scientific study of pedagogical problems, and for other purposes.''

The dispositive part of the resolution reads as follows:

''Section 1.—A Division of Technical Research is hereby created in the Department of Education of Porto Rico to make scientific investigations of pedagogical problems.

''Section 2.—The Commissioner of Education shall appoint the personnel of said Division.

''Section 3.—The Chief of the Division must be an expert in matters of scientific pedagogy, who shall have passed in all the postgraduate courses necessary to obtain the degree of Doctor in Education, or its equivalent, in some recognized university.

''Section 4.—The amount appropriated for the organization of this Division shall be paid from any fund in the Treasury not otherwise appropriated, or from the funds of the University of Porto Rico, as the Board of Trustees of the said University may provide.

''Section 5.—The personnel of said Division shall be as follows:

| | |
|---|---|
| ''One chief of Division | $4,000 |
| ''One Scorer of Psychrometric Examinations and Analyst of Pedagogical Statistics | 2,400 |
| ''One secretary-stenographer | 1,500 |
| ''Expenses of technical research | 3,000 |
| ''In all | $10,900'' |

If the above provisions are considered as a whole, it will be observed that nowhere in them did the lawmaker specifically appropriate the item contemplated by the statute. Section 2 of the Organic Act contains a paragraph which pro-

vides ''That no money shall be paid out of the Treasury except in pursuance of an appropriation by law, and on warrant drawn by the proper officer in pursuance thereof.'' Section 4 of the resolution says that ''The amount appropriated *for the organization* . . . shall be paid . . . ,'' and section 5 provides for the personnel of the division and the salaries thereof. That is all. And it must be admitted that it is not very clear.

But even construing the statute for the purpose of making it effective, and granting that the term ''organization'' means functioning year after year so long as the law is in force, can the words, ''as the Board of Trustees of the said University may provide,'' with which section 4 concludes be interpreted in the sense of imposing upon the Board of Trustees the duty to determine how the expenses of the division are to be paid, whether from the general funds in the Treasury not appropriated for other purposes, or from its own funds?

In our opinion they can not be so interpreted. The granting of such a power would be contrary to sound administrative practice and even to the Organic Act itself. The Legislature is the only one vested with that power, and it should directly exercise the same. It is incumbent on that body to provide for the revenues and to fix the expenditures. But even conceding that the board had said power, it may be inferred that in refusing to include in its budget the sum necessary to cover the expenses of the division, the board decided that said expenses should be paid from the general funds in the Treasury not appropriated for other purposes, and thus performed the duty imposed by the statute.

If the above interpretation is not correct, and granting that the averment of the petition with respect to the nonexistence of general funds in the Treasury were sufficient to disregard entirely that mode of payment, can the statute be construed in the sense that in such a case there arises the mandatory duty on the part of the board to pay said expenses?

The terms of the statute itself, the antecedents of the matter as the same appear from the allegations of the petition and from the recitals (*por cuantos*) of the joint resolution, the character of the organizations involved—the University and the Department of Education—and the manner in which they exercise their functions under the laws establishing them, demand a negative answer.

It appears that in view of weighty recommendations made and of its own experience, the Department of Education of Puerto Rico concluded that it would be desirable to organize in the department a Division of Technical Research. The University concurred in this project, and as it owned material resources which were not available to the department, it placed it at the disposal of the latter in order that it might act without delay.

. That was not the normal procedure. The Department of Education, as well as the other departments comprising the executive branch of the Insular Government, is supported by direct appropriations made in the General Appropriation Act, annually passed by the Legislature. The University is a state institution which has special sources of revenue provided by law. It functions under a special act and is governed by a Board of Trustees vested with ample powers to direct and carry out that part of the public educational work pertaining to universities. The matter of establishing the Division of Technical Research was considered of sufficient importance to present it to the Legislature. The latter gave its approval and provided in the manner already stated the necessary amount for the support of the division out of any funds in the Treasury not otherwise appropriated; but being aware of the attitude taken by the University in the past, it authorized the latter to continue aiding the Department of Education in the matter if it deemed it advisable.

We think that this is the proper interpretation of the concluding words of section 4. It is inconceivable that the Legislature, which by an act has left in the hands of the board the

direction of its own educational work and the distribution of the funds available for the proper development thereof, should subsequently impose for all time upon the board the mandatory duty to support a work which is not performed under its auspices but in another department of the government that functions independently.

The foregoing are some of the reasons justifying the dismissal of the appeal and the affirmance of the judgment appealed from.

Mr. Justice Wolf dissented.